SAMUEL D. WARREN, Appellant, v. DANIEL CAVANAUGH, Respondent.

St. Louis Court of Appeals, November 27, 1888.

**Equity: INJUNCTION.** Injunction will not lie to restrain or prevent the opening of a stone-quarry on the ground that such opening is forbidden by municipal ordinance.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES A. SEDDON, Judge.

AFFIRMED.

*Smith P. Galt,* for the appellant.

The quarry was not opened until the stone was reached and quarried, which was two months after the dwelling-house on lot 2 was erected and occupied. As the opening of the quarry and working it, within three hundred feet of the dwelling-house, without the consent of the occupant thereof, was a violation of the city ordinance, and therefore illegal and wrongful, and was an irreparable and continuous damage to plaintiff's property, plaintiff can maintain an injunction to restrain it, notwithstanding the fact that he bought lot 2 and erected the dwelling thereon with the intent and purpose of stopping the proposed quarry. *Jerome v. Ross,* 6 Johns. Ch. 341 ; *Sparhaw v. Railroad,* 54 Penn. 401 ; *Aldrich v. Howard,* 7 R. I. 87 ; *Railroad v. Railroad,* 69 Mo. and cases cited therein ; *Smith v. Lockwood,* 13 Barb. 217.

*Boyle, Adams & McKeighan,* for the respondent.

The law is well settled that courts of equity will not, by injunction or otherwise, restrain the doing of a thing which is not a nuisance *per se* or at common law,

but which is only unlawful or a nuisance by reason of an ordinance or regulation of city or town. *Village v. McFarland*, 33 Mich. 72; *Trustees v. Moore*, 34 Wis. 450; *Mayor v. Thorne*, 7 Paige, 261; *Phillip v. Allen*, 44 Pa. St. 481. Appellant did not and does not rely on the stone-quarry in question being a nuisance in fact, but bases his right to an injunction solely on the ordinance, and successfully objected at the trial to the respondent showing that the quarry had not been, and would not become, a nuisance. If the appellant had desired to base his action on a claim that the respondent's quarry was or would become a nuisance in and of itself, it was necessary for him to have set forth the facts and circumstances which made the quarry such a nuisance. *Adams v. Michael*, 38 Maryland, 123. Equity will not restrain the keeping of an unlicensed dramshop, although the keeping of it is a public nuisance. *State ex rel. v. Walsburg & Uhrig*, 14 Mo. App. 413. A nuisance cannot be abated in a private suit, or be enjoined against, except so far as the plaintiff is specially damaged. *Gay v. Tel. Co.*, 12 Mo. App. 485. A court of equity will not enjoin that which is made a nuisance by the policy of the law. *Sparback v. Railroad*, 54 Pa. St. A court of equity does not grant so harsh and rigorous a remedy as injunction upon mere speculative results. The injury must be a substantial and not a technical or speculative one. *Bigelow v. Bridge Co.*, 14 Ct. 565. The appellant does not bring himself even technically within the ordinance. The respondent had begun to open his quarry before appellant's shanty had begun to be removed. A court of equity will not grant an injunction where a summary remedy is provided by law for the abatement of an alleged nuisance by municipal authority. 1 High, sec. 745. This power is expressly granted to the mayor of the city by subdivision 6 of section 26, p. 1526, Revised Statutes, Scheme & Charter.

PEERS, J., delivered the opinion of the court.

This is a proceeding to enjoin the defendant from opening and working a stone-quarry on certain lots in the city of St. Louis, as the opening and working, as alleged in the petition, is without the consent in writing of the occupant of either of the two dwelling-houses owned by plaintiff and situated within three hundred feet of said proposed quarry, and without the defendant having obtained permission from the city of St. Louis so to do, by proper ordinance, and the same will be an irreparable injury to plaintiff's lot 2, which adjoins another lot upon which plaintiff's dwelling-house is situated, and also to other real estate belonging to plaintiff, and is and will be a violation of sections 372 and 373, of city ordinance No. 14,000, approved April 12, 1887, as follows :

"Section 372.   Hereafter no stone-quarry shall be opened or brick-kiln located, or soap-factory, slaughter-house, bone or rendering factory erected, within the distance of three hundred feet of any dwelling-house, built and inhabited before such opening, location or erection, without first having obtained permission so to do from the municipal assembly by proper ordinance. Any person, company of persons, firm or corporation, violating any or either of the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof be fined not less than one hundred, nor more than five hundred dollars.

"Section 373.  . It shall not be lawful for any person, company of persons, firm or corporation, to work a stone-quarry, or operate a brick-kiln, or carry on a soap-factory, slaughter-house, bone or rendering factory, opened, located or erected, after the passage of this article, within the distance of three hundred feet of any dwelling-house built and inhabited before such opening, location or erection, without the consent in writing of the owner and occupant or occupants of every such

house.  Any person, company of persons, firm or corporation, violating any of the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than twenty-five dollars for each and every such stone-quarry, brick-kiln, soap factory, slaughter-house, bone or rendering factory worked, operated or carried on without such consent."

The answer was as follows: " Now comes the said defendant and for answer denies each and every allegation in the plaintiff's petition contained.  Said defendant states that after he had bought the premises referred to in plaintiff's petition for the purpose of opening a stone-quarry, and had taken possession of, located, and opened a stone-quarry on the same, the plaintiff, contriving and intending to interrupt and prevent defendant from the said lawful use of said premises, all of which was well known to plaintiff, purchased and had conveyed to him lot 2 of Ewing's subdivision of lot 14, described in the petition herein, and built a cheap structure or shanty thereon at a cost of not to exceed fifty dollars, into which he put a tenant for temporary purposes, which shanty defendant says is less than three hundred feet from his said quarry.  Defendant says that said purchase of land by plaintiff and said erection of said shanty and the putting of a tenant therein were all done and continued by plaintiff in bad faith to make a colorable habitation and occupation temporarily for the purposes of this suit, and to prevent, if possible, defendant from enjoying the use of said premises for the specific lawful objects for which he purchased them, and for a purpose not constituting a nuisance in law or equity, and which, if in violation of an ordinance of the city of St. Louis, an ample remedy at law is provided by authority conferred by law on the city authorities of St. Louis to abate the same."   Wherefore

having fully answered said defendant asks to be hence discharged with his costs.

The reply was a general denial to new matter set up in the answer.

There is scarcely any dispute in the testimony, and the facts appearing in the record are as follows : The last of June, 1887, plaintiff heard that Farrelly was about buying lots B., E. and C. for the defendant to open a stone-quarry on ; plaintiff, knowing that a stone-quarry would depreciate the value of his residence property situated south of said opening, bought on June 9, 1887, lot 2, which adjoins lot C. on the south, and on July 11 and 12, 1887, erected a three-room frame dwelling-house thereon, which was occupied on the night of the twelfth by his tenant and family, and has been ever since. At the date when said dwelling was rented defendant had begun the excavation of said quarry, and had excavated about forty feet square and three feet deep on said lot C. and said excavation was close to the line between lot C. and lot 2. On the thirteenth of July, 1887, plaintiff served a written notice on defendant, notifying him not to open a quarry on said premises, and if he persisted in doing so, plaintiff would begin suit to enjoin him. Defendant continued his excavating, and on the twenty-seventh of July, 1887, plaintiff brought this suit. On the twenty-second of September, 1887, defendant reached rock at the depth of about thirty feet and opened the quarry by taking out stone, and was continuing to work it at the time of the hearing of this cause. It was admitted that defendant did not receive any consent to open the quarry from the occupant of the dwelling-house on lot 2, which was within three hundred feet of his proposed quarry, or from any person else. The testimony proved that the opening and working of the proposed quarry would depreciate the value of plaintiff's lot 2, and also of his said residence property, but how much could not be estimated. Defendant not only made said excavation

on lot C., but also ran a small and narrow trench from the excavation across lots B. and E., with the intent of claiming that by so doing he had opened a quarry thereon. Ordinance number 14,000 was in evidence.

The court below dismissed plaintiff's bill and within four days after judgment rendered, plaintiff filed his motion for new trial, which is on the usual grounds, which being overruled, plaintiff appealed to this court.

There are but two questions raised by the record: First, was the quarry "opened" when the dwelling-house on lot 2 was erected and occupied? Second, if not, is plaintiff upon the facts entitled to an injunction to protect his property from irreparable injury?

Relief under this bill is bottomed on the ordinance of the city of St. Louis as above set forth. It is nowhere said that this quarry is or will be a nuisance, nor does the ordinance directly or indirectly declare a stone-quarry a nuisance. The question is, will courts of equity, by injunction or otherwise, restrain the doing of a thing which is not a nuisance *per se* or at common law, but which is only illegal by reason of the ordinance or regulation of a city or town? In this case the ordinance is solely relied upon as furnishing the ground for the redress prayed for. This makes a clear-cut issue, and one under the decisions of the courts of the land quite easily disposed of. We are not aware that the identical question has been passed upon by the courts of this state, but we are not at a loss for authority on the question by reason of that fact, as the books are full of cases decided by the courts of last resort of other commonwealths, some of them quite elaborate in the discussion of the subject. No diversity of opinion, however, exists, all agreeing that a court of equity will not, by injunctive process, enforce a municipal ordinance. Municipal authorities have the right to prescribe by ordinance reasonable regulations for materials to be used in buildings within certain limits and the limits within

which certain occupations may be carried on. But with all such regulations courts of equity have no concern, unless the thing prohibited is at common law or *per se* a nuisance. Of course a court of equity may enjoin a defendant from doing that which an ordinance *also* prohibits, but not *because* of the ordinance, but rather because, and aside from the ordinance, the thing *itself* is a nuisance, either always or because of particular facts or circumstances surrounding the case. This we understand to be the doctrine laid down in *Aldrich v. Howard*, 7 R. I. 87.

It is no part of the business of this court to enforce the penal laws of the state or the by-laws of a corporation by injunction, unless the act sought to be restrained is a nuisance. *Mayor of Hudson v. Thorne*, 7 Paige, 261. Nowhere in this bill is it alleged that the stone-quarry in question is in itself a public nuisance. Was it unlawful for this defendant to open this quarry? If so, it is by reason of the ordinance alone. Without the ordinance no one can successfully dispute his right to do so. Courts of equity will not enjoin an act which would otherwise be lawful, but which is made unlawful by an ordinance or by-law of a city or town, unless the act is shown to be a nuisance *per se*. High on Injunctions, 788; *Phillips v. Allen*, 41 Pa. St. 481; *Schuster v. Board of Health*, 49 Barb. 450; *President v. Moore*, 34 Wis. 450; *Smith v. Lockwood*, 13 Barb. 209; *Village of St. John v. McFarlan*, 33 Mich. 72.

In the record before us the appellant has not sought in his petition, in proof, in brief, or in argument to show that the stone-quarry in question is, was, or likely to become, a nuisance, and it would seem that if the appellant had desired to base his action on the claim that the respondent's stone-quarry was, or would likely become, a nuisance, it was necessary for him to have set forth the facts and circumstances which made it a

nuisance. It was so held in *Adams v. Michael*, 38 Md. 123, and we think the holding correct.

This court has held, in an ample opinion by Judge THOMPSON, in which the ground was thoroughly gone over and the authorities cited, that equity will not restrain the keeping of an unlicensed dramshop, though the keeping of it is a public nuisance. *State v. Uhrig*, 14 Mo. App. 413.

It is well settled that a court of equity will not enjoin that which is made a nuisance by the policy of the law, and that private persons seeking the aid of a court of equity to restrain a public nuisance must show some special injury peculiar to themselves. This petition alleges no special or particular injury to appellant from respondent's quarry, different from that suffered by all those living within the prescribed three hundred feet; nor does the proof show any, nor is there any to be imagined. Appellant cannot in a private action enjoin for his neighbors, even if they were as near as three hundred feet. He can only enjoin because of some direct particular injury which he suffers different or in addition to the common general injury which all persons within the limited territory would suffer. He has not alleged any, nor proved any, nor can fancy depict any. If it were admitted, which it is not, that the appellant's house in lot two was built and occupied before the respondent opened his quarry within the meaning of the ordinance, still the appellant would not, upon principles which govern courts of equity in like cases, be entitled to an injunction.

A court of equity will not grant an injunction where the relief sought is disproportioned to the nature and extent of the injury which has been or is likely to be sustained, or where the injury is small or technical. 2 High, sec. 22, and cases cited; *Hall v. Rood*, 40 Mich. 46.

It is hardly necessary to pursue this subject further,

or to cite additional authorities. The decisions of the courts and the "horn-books" lay down the principles upon which this cause was decided by the trial court, and a careful examination of the record, together with authorities cited by industrious counsel in a brief full of learning, to which we have given no little time, study and attention, fails to convince us of any error committed by the lower court. We think the judgment is right and it must be affirmed. All concur.